**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SEBASTIAN FAZZINO, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:25-CV-1063 (JCH) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| CONNECTICUT TECHNICAL | : | MAY 29, 2026 |
| EDUCATION AND CAREER SYSTEMS | : | |
| d/b/a VINAL TECHNICAL HIGH SCHOOL, | : | |
| Defendant. | : | |

**ORDER CERTIFYING QUESTION RE: DEFENDANT'S MOTION TO DISMISS**
**AMENDED COMPLAINT (DOC. NO. 29) TO THE SUPREME COURT OF**
**CONNECTICUT**

I.      INTRODUCTION

This case is a disability discrimination lawsuit between the plaintiff, Sebastian

Fazzino ("Mr. Fazzino"), and the defendant, his employer, Connecticut Technical

Education and Career Systems (d/b/a as "Vinal Technical High School" and referred to

hereafter as "Vinal Tech").  On May 27, 2025, Mr. Fazzino filed his Complaint in the

Connecticut Superior Court for the Judicial District of Hartford.  See Doc. No. 1-1.  On

July 3, 2025, Vinal Tech moved to remove the action to federal court pursuant to this

court's federal question jurisdiction under 28 U.S.C. § 1441(a)-(c).  See Notice of

Removal (Doc. No. 1).  Vinal Tech moved to dismiss the Complaint on August 11, 2025.

See Motion to Dismiss Complaint (Doc. No. 17).  Thereafter, on September 2, 2025, Mr.

Fazzino filed an Amended Complaint alleging six counts of disability discrimination in

violation of both state and federal law.  See Amended Complaint ("Am. Compl.") (Doc.

No. 20).

1

On October 2, 2025, Vinal Tech filed its Motion to Dismiss the Amended Complaint ("Motion to Dismiss").  See Doc. No. 29; see also Memorandum in Support ("Memorandum") (Doc. No. 29-1).  On October 23, 2025, Mr. Fazzino filed his Opposition to the Motion to Dismiss.  See Doc. No. 30.  Vinal Tech filed its Reply on November 6, 2025.  See Doc. No. 31.  Vinal Tech seeks, inter alia, to dismiss Mr. Fazzino's prayer for punitive damages under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-60; 46a-104 arising under Counts One, Two, and Three of the Amended Complaint.  See Memorandum at 33-34.  Vinal Tech argues that punitive damages under CFEPA are barred by the doctrine of sovereign immunity.  Id.  Mr. Fazzino argues that the State expressly waived sovereign immunity for punitive damages when sought pursuant to Conn. Gen. Stat. § 46a-104. Mr. Fazzino notes that the statutory text of section 46a-104 lists punitive damages as one of the remedies available in a case brought pursuant to CFEPA.

No controlling precedent from either the Supreme Court of Connecticut or the Appellate Court has addressed whether the State has expressly waived immunity against punitive damages awarded under CFEPA.  This court certifies the following question ("Certified Question") to the Supreme Court of Connecticut:

> Has the State of Connecticut waived sovereign immunity as to punitive damages in actions brought against the State pursuant to Conn. Gen. Stat. § 46a-100, as delineated by § 46a-104?

## II.    LEGAL STANDARD

Under Connecticut law, the Connecticut Supreme Court "may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no

2

controlling appellate decision, constitutional provision or statute of this state."  Conn. Gen. Stat. § 51-199b(d).

To determine whether to certify a question to the Connecticut Supreme Court, a federal court must consider, among other factors: "(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation."  Bifolck v. Philip Morris, Inc., 2014 WL 585325, at *2 (D. Conn. Feb. 14, 2014) (quoting O'Mara v. Town of Wappinger, 485 F.3d 693, 698 (2d Cir. 2007)).  Certification allows state courts "to define state law," Gutierrez v. Smith, 702 F.3d 103, 116 (2d Cir. 2012), properly affording them the "first opportunity to decide significant issues of state law through the certification process . . . ."  Munn v. Hotchkiss Sch., 795 F.3d 324, 334 (2d Cir. 2015), certified question answered, 326 Conn. 540, 165 A.3d 1167 (2017).  Therefore, certification is especially appropriate where the issue "implicates the weighing of policy concerns," because "principles of comity and federalism strongly support certification."  Id.

Under section 51-199b of the Connecticut General Statutes, a certification order must contain:

(1) The question of law to be answered;

(2) The facts relevant to the question, showing fully the nature of the controversy out of which the question arose;

(3) That the receiving court may reformulate the question; and

(4) The names and addresses of counsel of record and unrepresented parties.

Conn. Gen. Stat. § 51-199b(f). To facilitate the work of the Connecticut Supreme Court,

3

and in compliance with section 51-199b of the Connecticut General Statutes, the court

sets forth below the relevant facts and the contested issue of law relevant to the

Certified Question to be answered.

### III.    FACTUAL BACKGROUND[1]

Mr. Fazzino was hired by Vinal Tech on or about January 2020, as a custodian

worker.  See Am. Compl. at ¶ 5.  Mr. Fazzino alleges that he is a qualified individual

with a disability and his disabilities include Bipolar Disorder, Depression, and Anxiety.

Id. at ¶ 7.  Mr. Fazzino alleges that his conditions substantially limited one or more of his

major life activities, including the ability to concentrate, think, remember, sleep, and eat.

Id.

In June 2022, Mr. Fazzino disclosed to Vinal Tech that he suffered from the

above listed mental conditions and that he needed an accommodation of intermittent

leave to manage flare-ups related to those conditions.  Id. at ¶ 8.  Vinal Tech directed

Mr. Fazzino to submit FMLA paperwork and an accompanying physician certification.

Id. at ¶ 9.  Following Mr. Fazzino's submission of the requested paperwork, Vinal Tech

approved Mr. Fazzino's accommodation request, designating it as intermittent leave

pursuant to the provisions of the FMLA.  Id.

However, following Mr. Fazzino's disclosure of his disabilities, Mr. Fazzino

alleges that he was subjected to a succession of repeated acts by his supervisor, Cindy

Corcoran ("Ms. Corcoran"), that were disparate, harassing, discriminatory, and

retaliatory.  Id. at ¶ 10.  Ms. Corcoran would "relentlessly question" Mr. Fazzino each

---

[1] The following factual allegations are drawn from Mr. Fazzino's Amended Complaint.  (Doc. No. 20).  At the pleading stage, a federal district court, ruling on a defendant's Motion to Dismiss, must accept all facts alleged in the Complaint as true and draw all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).

time Mr. Fazzino tried to use his approved intermittent leave, forcing Mr. Fazzino to disclose to her his medical conditions.  Id. at ¶ 11.  Ms. Corcoran did not require other employees to explain their medical conditions when those conditions required an absence from work.  Id.  Mr. Fazzino stated that Ms. Corcoran disseminated information regarding his conditions to his coworkers, resulting in routine ridicule and mocking by them.  Id. at ¶ 12.  On June 28, 2022, Mr. Fazzino filed a complaint of harassment against Ms. Corcoran concerning her alleged repeated harassing behaviors related to Mr. Fazzino's use of his intermittent absence accommodation and dissemination of sensitive medical information to his colleagues.  Id. at ¶ 13.

On or around March 20, 2023, Mr. Fazzino suffered a serious work-related back injury.  Id. at ¶ 14.  Upon his medical discharge clearing him to return to work, Ms. Corcoran notified Mr. Fazzino that, unless he was 100% recovered without restriction, he was not eligible to return to work.  Id.  As a result, Mr. Fazzino was unable to return to work until June 26, 2023.  Id. at ¶ 15.  By contrast, Vinal Tech accommodated Mr. Fazzino's coworker, Ted,[2] who shared both the same job title and the same supervisor as Mr. Fazzino.  Id. at ¶ 16.  Following neck surgery that required medical leave, Ted was permitted to return to work while under medical restrictions, which included wearing a neck brace, without being required to demonstrate that he was 100% recovered without restriction.  Id. at ¶ 17.  Mr. Fazzino alleges that Ted's medical leave and return to work with visible physical restrictions did not result in any disciplinary action by Ms. Corcoran.  Id. at ¶ 19.

---

[2] Ted's last name is not alleged.

Two days after Mr. Fazzino's return to work, Ms. Corcoran alleged unsatisfactory work performance by Mr. Fazzino. Id. at ¶ 21. Prior to Mr. Fazzino's disclosure of his medical condition to Ms. Corcoran and subsequent complaint against her, Mr. Fazzino had never received a single disciplinary action or other indication of poor job performance. Id. at ¶ 22.

Following Mr. Fazzino's return to work in June 2023, Mr. Fazzino learned that Vinal Tech underwent and failed a kitchen State inspection. Id. at ¶ 23. Ms. Corcoran and Mr. Fazzino's coworker Rich Parker ("Mr. Parker") accused Mr. Fazzino of being the reason for the failed State inspection, despite Mr. Fazzino having not been on the job in the three months leading up to the inspection. Id. at ¶ 24. Mr. Fazzino complained to Ms. Corcoran that he felt that he was being discriminated and retaliated against due to his disabilities. Id. at ¶ 25. During this conversation, whenever Mr. Fazzino attempted to defend himself, Mr. Parker and Ms. Corcoran would mock Mr. Fazzino and cut him off to the point of his total frustration. Id. at ¶ 26. As a result of this frustration, Mr. Fazzino exclaimed, "if I was such a bad person and my work was so unsatisfactory and unappreciated, would you like for me to just go home and kill myself?" Id. Mr. Fazzino alleges that this remark was intended in jest, and Mr. Parker and Ms. Corcoran understood it as such when they notified the Vinal Tech principal that they had spoken with Mr. Fazzino. Id. at ¶ 27.

The day after, Mr. Fazzino suffered great anxiety from the verbal altercation with Ms. Corcoran and Mr. Parker, which resulted in a stomach illness for which he notified Ms. Corcoran that he would be out of work for two days. Id. at ¶ 28. Although Mr. Fazzino properly called out and notified Ms. Corcoran of his intended absence, Ms.

6

Corcoran called the police and requested a wellness check at Mr. Fazzino's residence. Id. at ¶ 29.  Mr. Fazzino's residence was surrounded by emergency services, and he was forced out of his home by law enforcement and transported to a hospital for evaluation.  Id.  Mr. Fazzino was evaluated and discharged that same day without restriction or other concerns.  Id.

Ms. Corcoran's allegedly habitual harassing behavior continued following Mr. Fazzino's return to work when, despite no history of verbal or written warnings of any kind pertaining to Mr. Fazzino's performance, Ms. Corcoran issued Mr. Fazzino a performance improvement plan ("PIP").  Id. at ¶ 31.  Following the PIP, on August 15, 2023, Ms. Corcoran wrote up Mr. Fazzino for "abuse of sick time" despite the missed time being protected leave.  Id. at ¶ 32.  On August 21, 2023, Ms. Corcoran both told Mr. Fazzino and documented: "Step up, stop calling out and start performing or [he] will find himself out of a job."  Id. at ¶ 33.  Three weeks later, on September 21, 2023, Ms. Corcoran issued Mr. Fazzino a negative performance evaluation with attendance listed as one of the bases for his poor performance, despite Mr. Fazzino's disability-related absences qualifying as protected leave.  Id. at ¶ 34.  When Ms. Corcoran was unable to produce documented job performance issues, she provided photographs demonstrating that Mr. Fazzino had not performed a variety of job functions.  Id. at ¶ 35. However, those photographs were neither dated nor time stamped, and no location was listed.  Id.

The allegedly harassing and hostile environment persisted, resulting in Mr. Fazzino taking a full-time FMLA leave of absence from October 5, 2023, through October 19, 2023.  Id. at ¶ 36.  Following his return to work from this leave, Ms. Corcoran issued Mr. Fazzino a written warning for job performance and his FMLA-

covered absences.  Id. at ¶ 37.  Ms. Corcoran documented that, when Mr. Fazzino was tasked with specific projects that had detailed instructions, Mr. Fazzino "did a fantastic job," but without those instructions, Mr. Fazzino had difficulty remembering to complete certain tasks.  Id. at ¶ 38.  Mr. Fazzino had disclosed to Ms. Corcoran that he suffered from memory issues related to his condition, but Ms. Corcoran failed to engage in any interactive process to accommodate his disability and used his memory issues against him to subject Mr. Fazzino to further discipline.  Id. at ¶ 39.

On February 2, 2024, Ms. Corcoran issued Mr. Fazzino a second performance evaluation outside of the annual evaluation cycle, allegedly issuing a poor rating in part for Mr. Fazzino's disability accommodations and FLMA protected absences.  Id. at ¶ 40. Mr. Fazzino was the only employee subject to an off-cycle performance evaluation by Ms. Corcoran.  Id.  On February 28, 2024, Mr. Fazzino was suspended due to the second negative performance evaluation.  On March 6, 2024, Mr. Fazzino received a letter of dismissal from State Service for having received two successive negative performance evaluations.  Id. at ¶¶ 42, 43.

## IV.    DISCUSSION

Sovereign immunity is an ancient and well-established doctrine in Connecticut, developed to prevent the use of private litigation in a manner that interferes with government function.  Allen v. Comm'r of Revenue Servs., 324 Conn. 292, 298-99 (2016); Gold v. Rowland, 296 Conn. 186, 212 (2010).  Sovereign immunity goes to the question of a court's subject matter jurisdiction and is based on the common-law principle that a state may only be sued with its consent, a principle that extends to officers and agents of the state.  Allen, 324 Conn. at 299.  Connecticut courts have

8

recognized statutory waiver as an exception to sovereign immunity, which occurs when the General Assembly, either expressly or by force of a necessary implication, statutorily waives the State's sovereign immunity.[3]  See Spillane v. Lamont, 350 Conn. 119, 127 (2024).

With respect to statutory waiver, a party that seeks to overcome the presumption of sovereign immunity must show that the legislature statutorily waived the State's immunity.  Allen, 324 Conn. at 299.  In assessing whether the legislature waived immunity, the court is to be guided by the established principle that statutes in derogation of sovereign immunity should be strictly construed.  Id. at 300.  Where there is doubt as to a statute's intent, the intent given must make the least, rather than the most, change to sovereign immunity.  Id.  The scope of any waiver construed must be confined strictly to the extent provided by the statute.  Id.  Therefore, statutory waiver of sovereign immunity is fundamentally a question of statutory interpretation.  Id.

When interpreting waiver in the context of punitive damages specifically, the Supreme Court has stated that there must be "explicit statutory language to support an award of punitive damages."  Ames v. Comm'r Of Motor Vehicles, 267 Conn. 524, 536 (2004).  Courts are to follow the principle that, when the General Assembly wishes to waive immunity as to punitive damages explicitly, it knows how to do so.  Id.  Indeed, the Supreme Court has held that "when the legislature chooses to act, it is presumed to know how to draft legislation consistent with its intent."  King v. Volvo Excavators AB,

---

[3] Connecticut courts have also recognized two other exceptions to sovereign immunity, neither of which apply in this case: (1) when an action seeks declaratory or injunctive relief on the basis of a substantial claim that the state or its officers have violated a plaintiff's constitutional rights and (2) when an action seeks declaratory or injunctive relief on the basis of a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority.  See Spillane v. Lamont, 350 Conn. 119, 127 (2024).

333 Conn. 283, 296 (2019) (discussing unambiguous expression of legislative intent in the context of retroactive application of a statute.)

That waiver of immunity from punitive damages requires explicit statutory language dovetails with a longstanding public policy against permitting punitive damages against the state.  See City of Hartford v. Int'l Ass'n of Firefighters, Loc. 760, 49 Conn. App. 805, 817 (1998).  Courts in Connecticut have drawn upon federal analogues in assessing the availability of punitive damages against the state in light of this policy consideration.  For example, the Appellate Court in Ware v. State, 118 Conn. App. 65, 89 (2009), viewed the U.S. Supreme Court's determination that punitive damages are not available against municipalities in actions brought under 42 U.S.C. § 1983 as instructive in its discussion of the public policy against punitive damages.

Nonetheless, while it is true generally that punitive damages may not be recovered from the state as a matter of public policy, punitive damages may still be recoverable where "expressly authorized by statute or through statutory construction." See City of Hartford v. Int'l Ass'n of Firefighters, Loc. 760, 49 Conn. App. 805, 817 (1998).  Therefore, in properly examining a prayer for punitive damages against the State, a court must assess whether relief is sought under "a statute that explicitly provides for the recovery of punitive damages."  Id.

In arguing that sovereign immunity bars punitive damages in actions brought under CFEPA against the State, see Memorandum 33-34, Vinal Tech cautions that where there is doubt as to whether a statute disturbs sovereign immunity, a court must construe the statute in a manner that makes the least change to the status quo of sovereign immunity.  Id. at 34.  Vinal Tech argues that Connecticut Superior Courts

have consistently held that the state has not waived sovereign immunity as to penalty damages under CFEPA and that no court has yet held otherwise.  Reply at 10.

However, Mr. Fazzino argues that the State of Connecticut waived its sovereign immunity as to punitive damages awarded in employment discrimination actions under CFEPA in the express language of section 46a-104.  Opposition at 25.  Section 46a-104 provides that "[t]he court may grant. . . such legal and equitable relief which it deems appropriate including, but not limited to, temporary or permanent injunctive relief, punitive damages, attorney's fees and court costs." (emphasis added).  Mr. Fazzino asserts that a court is to construe a statute as written and that the plain language of the statute expressly provides for an award of punitive damages in a discrimination case brought pursuant to section 46a-100.  Id. at 26.

Mr. Fazzino argues that the Connecticut General Assembly amended section 46a-104 in 2019 to include punitive damages explicitly.  Id.  The 2019 amendment was enacted in response to the Connecticut Supreme Court's ruling in Tomick v. United Parcel Service, Inc., et al. 324 Conn. 470 (2016).[4]  The Tomick holding was that "§ 46a–104 [did] not authorize an award of punitive damages in employment discrimination cases."  Id. at 486.  The Supreme Court reasoned that, had the Connecticut legislature "intended for § 46a–104 to provide for statutory punitive damages, it could have amended the state statute. . . and it remains free to do so."  Id.  Mr. Fazzino argues that the Connecticut legislature did just that in 2019.  Indeed, Mr. Fazzino argues that,

---

[4] While Conn. Gen. Stat. § 1-2z cabins its use, the legislative history indicates that the 2019 amendment adding punitive damages as a remedy delineated in section 46a–104 was in direct response to Tomick. "The bill allows courts to award punitive damages in discrimination cases that were released from CHRO jurisdiction. In 2016, the state Supreme Court ruled that the current statute does not authorize courts to award punitive damages (Tomick v. United Parcel Service, Inc., 324 Conn. 470 (2016))." Connecticut Bill Analysis, 2019 S.B. 3.

11

because the term "employer" is explicitly defined in the CFEPA statute to include "the state and all political subdivisions thereof," section 46a-51(10), and an "employer" may be found liable for punitive damages under section 46a-60, it follows that the State, as an employer, would be subject to the remedies delineated in section 46a–104, as amended in 2019.[5]  Opposition at 26.

Vinal Tech notes that Connecticut Superior Courts have found that the statutory language of CFEPA is silent as to the availability of punitive damages against the State, even after the 2019 amendment.  See Memorandum at 34.  Indeed, the court in Pacheco reasoned that "[t]here is nothing in the language of the act that explicitly, or by force of necessary implication, subjects the state to claims for punitive damages." Pacheco v. Dep't of Correction, 2023 WL 142346, at *4 (Conn. Super. Ct. Jan. 5, 2023); see also Laghari v. Dep't of Corr., 2023 WL 4446671, at *3 (Conn. Super. Ct. July 7, 2023) (adopting the holding in Pacheco).

The Supreme Court of Connecticut has consistently held that, when construing a statute, the "fundamental objective is to ascertain and give effect to the apparent intent of the legislature."  State v. Moore, 352 Conn. 912, 919 (2025).  Indeed, courts look to CT Gen. Stat. § 1-2z ("Plain Meaning Rule") to guide their interpretation of a statute's language.  Id.  The Plain Meaning Rule provides that where "the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."  Conn.

---

[5] Reading the different clauses together, an "'Employer' includes the state and all political subdivisions thereof."  Conn. Gen. Stat. § 46a-51(10).   "It shall be a discriminatory practice in violation of this section for an employer [including the State]. . . to discriminate against any individual. . . because of the individual's  . . disability." Conn. Gen. Stat. § 46a-60.  "The court may grant a complainant in an action brought in accordance with section 46a-100 such legal and equitable relief which it deems appropriate including. . . punitive damages."  Conn. Gen. Stat. § 46a-104.

Gen. Stat. Ann. § 1-2z (West).  A well settled principle of statutory interpretation is that the legislature knows how to convey its intent expressly and use broader or limiting terms when choosing to do so.  Stafford v. Roadway, 312 Conn. 184, 194 (2014).

In acknowledging that punitive damages represents an extraordinary remedy requiring express statutory language, the Supreme Court in Ames reviewed statutes that did convey a legislative intent to authorize punitive damages.  Ames v. Comm'r Of Motor Vehicles, 267 Conn. 524, 536 (2004).  Indeed, the Ames court noted that language such as, the court may "award. . . punitive damages" and "punitive damages may be assessed" frequently represented the General Assembly's intent to authorize punitive damages in actions brought under various statutes.  See id.; see also, Conn. Gen. Stat. Ann. § 4d–39(c); Conn. Gen. Stat. Ann. § 16–8d(b); Conn. Gen. Stat. Ann. § 19a–550(e); Conn. Gen. Stat. Ann. § 31–290a(b).

The Plain Meaning Rule does not permit courts to look to legislative history in determining whether a statute is ambiguous.  Moore, 352 Conn. at 919.  However, where a statute's text is not plain and unambiguous, a court may consider the statute's legislative history and the circumstances surrounding its enactment.  Doe v. Town of W. Hartford, 328 Conn. 172, 182 (2018).  To the extent any ambiguity remains as to the availability of punitive damages against State employers following the 2019 amendment, Mr. Fazzino points to the legislative history of the amendment as evidence of "a legislative intent to broaden the types of remedies available for all victims of discrimination, not just those victimized by private employers."  Opposition at 27.

Indeed, Senator Martin M. Looney, President pro tempore of the Connecticut Senate, stated on the Senate floor that, "although [the Legislature] began [the CFEPA

13

amendment] process last year with a review of our sexual harassment laws, I'm pleased it gave us the opportunity to consider changes to workplace discrimination as a whole." Connecticut Senate Transcript 4/1/2019.  Senator Looney stated that the Amendment provided "the opportunity to consider changes to workplace discrimination as a whole . . . [and] many provisions in the bill will help employees discriminated on the basis of race, religion, disability, veteran status and other protected classes" precisely because the Amendment allows, among other things, the opportunity for victims to seek punitive damages.  Id.  In Mr. Fazzino's view, the broad remedial intent of the Connecticut legislature in amending section 46a–104 to undergird protections in the workplace against discrimination necessarily encourages giving the amendment its plain meaning to provide for punitive damages against public employers.  Opposition at 27.

The issue before the court is whether the State of Connecticut waived sovereign immunity as to punitive damages in actions brought, pursuant to Conn. Gen. Stat. § 46a-100, against the State after 2019.

A.  Absence of Controlling Connecticut Law

In determining issues of state law, the court looks primarily to the opinions of that state's courts and, in the absence of an authoritative answer, accords to State courts the first opportunity to decide the issue.  Munn, 795 F.3d at 334 (2d Cir. 2015); Parrot v. Guardian Life Ins. Co. of Am., 338 F.3d 140, 144 (2d Cir. 2003), certified question answered, 273 Conn. 12 (2005).  This is especially so where, as here, the issue implicates the weighing of competing public policy concerns.  Parrot, 338 F.3d at 144.  Whether Mr. Fazzino is entitled to punitive damages in an employment discrimination action brought against a State employer depends on whether the State

14

has waived sovereign immunity as to punitive damages.  Here, the parties disagree, and neither the Connecticut Supreme Court nor Appellate Court has addressed the issue.  The court concludes that the issue presented by this case should be certified to the Connecticut Supreme Court for three reasons.

First, Connecticut appellate precedent provides insufficient guidance on the question at issue.  Vinal Tech is correct that Connecticut Superior Courts have "consistently held that sovereign immunity has not been waived" as to punitive damages under CFEPA, even after the 2019 amendment.  Reply at 10 (citing Laghari v. Dep't of Corr., 2023 WL 4446671, at *3 (Conn. Super. Ct. July 7, 2023); Syed v. Dep't of Corr., 2023 Conn. Super. LEXIS 4062, *7 (Conn. Super. Ct. Jan. 12, 2023) (declining to reach the issue of whether the legislature waived sovereign immunity from punitive damages under CFEPA because plaintiff abandoned the argument); Pacheco v. Dep't of Correction, 2023 WL 142346, at *4 (Conn. Super. Ct. Jan. 5, 2023); and Kowal v. Dept. of Developmental Services, Docket No. CV-20-6129530-S (Conn. Super. Ct. Dec. 22, 2020) (Cobb, J.))[6]  However, there is no appellate authority on the issue and, therefore, no prior case law is authoritative.

---

[6] In Madden v. Dept. of Correction, Docket No. CV-22-6157025-S (Conn. Super. Ct. May 25, 2023), the Commission on Human Rights and Opportunities ("CHRO") intervened to assert, inter alia, its position that CFEPA authorizes the award of punitive damages against the state.  The CHRO argued in its Opposition to the Motion to Dismiss that the "plain language of the statute explicitly provides that punitive damages are an available remedy in discrimination cases brought pursuant to § 46a-100." Opposition at 13 (Doc. No. 108).  The CHRO also argued that, although the 2019 amendment was meant to address the Supreme Court's decision in Tomick, a case involving a private employer, nothing in the legislative history indicates that the amendment was limited in application to only private employers. Id. at 13-14.  Indeed, the CHRO asserted that the only reasonable interpretation of section 46a-104 is that punitive damages are available in actions against the state given the broad remedial purposes evidenced in the legislative history. Id. at 14-15.

The court ultimately dismissed the Complaint on other grounds, not reaching the issue of punitive damages. Madden, at *3 (Conn. Super. Ct. May 25, 2023) (Doc. No. 103.86).

Moreover, the limited case law available from the Superior Court level is in tension with other cases interpreting section 46a-104 as a waiver of sovereign immunity as to the other remedies provided in that provision prior to the 2019 amendment. "Section 46a–104 [as of 2017] expressly waives the state's immunity with regard to back pay, compensatory damages, attorneys fees, and court costs." Dietrich v. UConn Health, 2017 WL 3174312, at *2 (Conn. Super. Ct. June 15, 2017). This waiver extends to injunctive relief as well. "Sovereign immunity does not bar the plaintiff's claim for an injunction requiring the removal of any and all adverse information contained in the plaintiff's personnel file as § 46a-104 expressly waives the state's immunity with regard to temporary or permanent injunctive relief." Koehler v. S. Connecticut State Univ., 2019 WL 1504002, at *6 (Conn. Super. Ct. Feb. 26, 2019). The Dietrich and Koehler courts found that the other remedies provided in section 46a-104 were available in actions against the State based only on the language of section 46a-104. Therefore, it is unclear why punitive damages, once added by the General Assembly to section 46a-104 in 2019, were not applied with equal force against the State on the basis of express statutory waiver. The court presumes that countervailing public policy concerns, unique to sovereign immunity from punitive damages specifically, is the animating counterbalance.

There exists tension between the plain meaning of the statutory language—that (1) under section 46a-60, an "employer" may be found liable for workplace discrimination, (2) section 46a-51(10) defines "employer" to include the State, and (3) section 46a-104 allows punitive damages against an "employer" found liable under

16

section 46a-60—and that waiver of sovereign immunity, particularly as to punitive damages, is not an abrogation courts should undertake lightly.

The court has difficulty accepting Vinal Tech's argument that the statute is "silent" as to punitive damages against the State.  See Memorandum at 34; see also, supra, note 4.  However, if Vinal Tech's argument is that there is no explicit declaratory statement that the State is subject to punitive damages under the statute, contained within section 46a-100 (or elsewhere in the statute), the court agrees that CFEPA lacks such express language.  That tension presents itself here, in the context of federalism, where issues of state law should be decided first by the Connecticut Supreme Court.  Where existing authority is inconclusive, certification is appropriate.  Parrot, 338 F.3d at 144 (2d Cir. 2003).

Second, the interpretation of section 46a-104 implicates important public policy considerations.  "As a result, Connecticut has a strong interest in deciding the issue certified rather than having the only precedent on point be that of the federal court, which may be mistaken."  Parrot, 338 F.3d at 145.  Public policy considerations including whether to further derogate sovereign immunity, whether to allow punitive damages against the State, and the scope of protections provided by a remedial antidiscrimination statute are all necessarily implicated by the answer to the question certified.  In our system of federalism, unsettled issues most acutely impacting the State, such as the availability of punitive damages recoverable against the State, should be resolved by the State in the first instance.

Third, the issue presented in this case is likely to recur; consequently, its resolution will assist with the administration of justice in both state and federal courts.

17

Id. CFEPA covers all Connecticut employers with one or more employees, meaning that even the smallest Connecticut employers are subject to CFEPA's provisions. See § 46a-51(1). In addition, CFEPA protects a broader range of protected classes than is recognized under federal antidiscrimination law. See, e.g., § 46a-58 (status as a victim of domestic violence is protected). Clarity as to the remedies available under the statute for suits against state employers will allow for greater predictability in the administration of a statute that touches a broad range of employers and employees. Certification would allow Connecticut to carefully consider and weigh the policy considerations at play in this case and continue to shape its own antidiscrimination statutory framework.

## V.    Question for Certification

Because "the answer may be determinative" as to the availability of certain remedies under CFEPA and because existing Connecticut law contains "no controlling appellate decision, constitutional provision or statute," see Conn. Gen. Stat. § 51-199b(d), the court certifies the following question to the Supreme Court of Connecticut:

> Has the State of Connecticut waived sovereign immunity as to punitive damages in actions brought against the State pursuant to Conn. Gen. Stat. § 46a-100, as delineated by § 46a-104?

As provided in Section 51-199b(f)(3), the Connecticut Supreme Court may reformulate or augment this question as it sees fit.

## VI.    Names and Addresses

As required under Section 51-199b(f)(4), the names and addresses of counsel

of record are as follows:

Alexander T. Taubes
470 James Street
Suite 007
New Haven, CT 06513
203-909-0048
Email: alextt@gmail.com


Lilia N Hrekul
Office of the Attorney General
165 Capitol Avenue
Ste 5000
Hartford, CT 06106
860-808-5340
Email: Lilia.Hrekul@ct.gov

## VII.    Conclusion

For the foregoing reasons, the court certifies the following question to the

Connecticut Supreme Court, subject to that Court's reformulation:

Has the State of Connecticut waived sovereign immunity as to punitive damages
in actions brought against the State pursuant to Conn. Gen. Stat. § 46a-100, as
delineated by § 46a-104?

**SO ORDERED.**

Dated at New Haven, Connecticut this 29th day of May 2026.


/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge