**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

SEBASTIAN FAZZINO,                 :          CIVIL CASE NO.
     Plaintiff,                :          3:25-CV-1063 (JCH)
                              :
                              :
v.                              :
                              :
CONNECTICUT TECHNICAL       :          MAY 29, 2026
EDUCATION AND CAREER SYSTEMS  :
d/b/a VINAL TECHNICAL HIGH SCHOOL, :
     Defendant.              :

**RULING ON MOTION TO DISMISS AMENDED COMPLAINT (DOC. NO. 29)**

**I.      INTRODUCTION**

The plaintiff, Sebastian Fazzino ("Mr. Fazzino"), brings this suit against

Connecticut Technical Education and Career Systems (d/b/a as "Vinal Technical High

School" and referred to hereafter as "Vinal Tech"), alleging disability discrimination

under the Connecticut Fair Employment Practices Act ("CFEPA"), General Statutes §

46a-60(b)(1); (b)(4), the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601;

Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e et seq.; and Section 504

of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794.  See generally, Amended

Complaint ("Am. Compl.") (Doc. No. 20).

Before the court is Vinal Technical High School's Motion to Dismiss the Amended

Complaint.  See Defendant's Motion to Dismiss ("Mot.") (Doc. No. 29).  Mr. Fazzino

opposes the Motion.  See Plaintiff's Memorandum of Law in Response to Motion to

Dismiss ("Opp.") (Doc. No. 30); see also Defendant's Reply in Support of Motion to

Dismiss Amended Complaint ("Reply") (Doc. No. 31).

For the reasons stated below, the Motion is granted in part and denied in part.

1

## II.    BACKGROUND

### A.  Plaintiff's Alleged Facts

Mr. Fazzino was hired by Vinal Tech on or about January 2020, as a custodian worker.  See Am. Compl. at ¶ 5.  Mr. Fazzino was a qualified individual with a disability and his disabilities included Bipolar Disorder, Depression, and Anxiety.  Id. at ¶ 7.  Mr. Fazzino alleges that his conditions substantially limited one or more of his major life activities, including the ability to concentrate, think, remember, sleep, and eat.  Id.  In June 2022, Mr. Fazzino disclosed to Vinal Tech that he suffered from the above listed mental conditions and that he needed an accommodation of intermittent leave to manage flare-ups related to those conditions.  Id. at ¶ 8.  Vinal Tech directed Mr. Fazzino to submit FMLA paperwork and an accompanying physician certification.  Id. at ¶ 9.  Following Mr. Fazzino's submission of the requested paperwork, Vinal Tech approved Mr. Fazzino's accommodation request, designating it as intermittent leave pursuant to the provisions of the FMLA.  Id.

However, following Mr. Fazzino's disclosure of his disabilities, Mr. Fazzino alleged that he was subjected to a succession of repeated acts by his supervisor, Cindy Corcoran ("Ms. Corcoran"), that were disparate, harassing, discriminatory, and retaliatory.  Id. at ¶ 10.  Ms. Corcoran would "relentlessly question" Mr. Fazzino each time Mr. Fazzino tried to use his approved intermittent leave, forcing Mr. Fazzino to disclose to her his medical conditions.  Id. at ¶ 11.  Ms. Corcoran did not require other employees to explain their medical conditions when those conditions required an absence from work.  Id.  Mr. Fazzino stated that Ms. Corcoran disseminated information regarding his conditions to his coworkers, resulting in routine ridicule and mocking by them.  Id. at ¶ 12.  On June 28, 2022, Mr. Fazzino filed a complaint of harassment

against Mr. Corcoran concerning her repeated harassing behaviors related to Mr. Fazzino's use of his intermittent absence accommodation and her dissemination of sensitive medical information to his colleagues.  Id. at ¶ 13.

On or around March 20, 2023, Mr. Fazzino suffered a serious work-related back injury.  Id. at ¶ 14.  Upon his medical discharge back to work, Ms. Corcoran notified Mr. Fazzino that, unless he was 100% recovered without restriction, he was not eligible to return to work.  Id.  As a result, Mr. Fazzino was unable to return to work until June 26, 2023.  Id. at ¶ 15.  By contrast, Vinal Tech accommodated Mr. Fazzino's coworker, Ted,[1] who shared both the same job title and the same supervisor as Mr. Fazzino.  Id. at ¶ 16.  Following a neck surgery that required medical leave, Ted was permitted to return to work while under medical restrictions, which included wearing a neck brace, without being required to demonstrate that he was 100% recovered without restriction. Id. at ¶ 17.  Mr. Fazzino alleges that Ted's medical leave and return to work with visible physical restrictions did not result in any disciplinary action by Ms. Corcoran.  Id. at ¶ 19. However, two days after Mr. Fazzino's return to work, Ms. Corcoran alleged unsatisfactory work performance by Mr. Fazzino.  Id. at ¶ 21.  Prior to Mr. Fazzino's disclosure of his medical condition to Ms. Corcoran and subsequent complaint against her, Mr. Fazzino had never received a single disciplinary action or indication of poor job performance.  Id. at ¶ 22.

Following Mr. Fazzino's return to work in June 2023, Mr. Fazzino learned that Vinal Tech underwent and failed a kitchen state inspection.  Id. at ¶ 23.  Ms. Corcoran and Mr. Fazzino's coworker Rich Parker ("Mr. Parker") accused Mr. Fazzino of being

---

[1] Last name unknown.

the reason for the failed state inspection despite Mr. Fazzino having not been on the job in the three months leading up to the inspection.  Id. at ¶ 24.  Mr. Fazzino complained to Ms. Corcoran that he felt that he was being discriminated and retaliated against due to his disabilities.  Id. at ¶ 25.  During this conversation, whenever Mr. Fazzino attempted to defend himself, Mr. Parker and Ms. Corcoran would mock Mr. Fazzino and cut him off to the point of total frustration.  Id. at ¶ 26.  As a result of his frustration, Mr. Fazzino exclaimed, "if I was such a bad person and my work was so unsatisfactory and unappreciated, would you like for me to just go home and kill myself?"  Id.  Mr. Fazzino's remark was said in jest, and Mr. Parker and Ms. Corcoran understood it as such when they notified the Vinal Tech principal that they had spoken with Mr. Fazzino. Id. at ¶ 27.

The following day, Mr. Fazzino suffered great anxiety from the verbal altercation with Ms. Corcoran and Mr. Parker, resulting in a stomach illness for which he notified Ms. Corcoran that he would be out of work for two days.  Id. at ¶ 28.  Although Mr. Fazzino properly called out and notified Ms. Corcoran of his intended absence, Ms. Corcoran called the police and requested a wellness check to Mr. Fazzino's residence. Id. at ¶ 29.  Mr. Fazzino's residence was surrounded by emergency services, and he was forced out of his home by law enforcement to be transported to a hospital for evaluation.  Id.  Mr. Fazzino was evaluated and discharged that same day without restriction or other concerns.  Id.

Ms. Corcoran's allegedly habitual harassing behavior continued following Mr. Fazzino's return to work when, despite no history of verbal or written warnings of any kind pertaining to Mr. Fazzino's performance, Ms. Corcoran issued Mr. Fazzino a

performance improvement plan (i.e., a "PIP"). Id. at ¶ 31. Following the PIP, on August 15, 2023, Ms. Corcoran wrote up Mr. Fazzino for "abuse of sick time," despite the missed time being protected leave. Id. at ¶ 32. On August 21, 2023, Ms. Corcoran both told Mr. Fazzino and documented, "step up, stop calling out and start performing or [he] will find himself out of a job." Id. at ¶ 33. Three weeks later, on September 21, 2023, Ms. Corcoran issued Mr. Fazzino a negative performance evaluation with attendance listed as one of the bases for his poor performance, despite Mr. Fazzino's disability-related absences qualifying as protected leave. Id. at ¶ 34. When Ms. Corcoran was unable to produce documented job performance issues, she provided photographs demonstrating that Mr. Fazzino had not performed a variety of job functions, but those photographs were neither dated nor time stamped, and no location was listed. Id. at ¶ 35.

The allegedly harassing and hostile environment persisted, resulting in Mr. Fazzino taking a full-time FMLA leave of absence from October 5, 2023, through October 19, 2023. Id. at ¶ 36. Following his return to work from this leave, Ms. Corcoran issued Mr. Fazzino a written warning for job performance and his FMLA-covered absences. Id. at ¶ 37. Ms. Corcoran documented that, when Mr. Fazzino was tasked with specific projects that had detailed instructions, Mr. Fazzino "did a fantastic job," but without those instructions, Mr. Fazzino had difficulty remembering to complete certain tasks. Id. at ¶ 38. Mr. Fazzino had disclosed to Ms. Corcoran that he suffered from memory issues related to his condition, but Ms. Corcoran failed to engage in any interactive process to accommodate his disability and used his memory issues against him to subject Mr. Fazzino to further discipline. Id. at ¶ 39.

5

On February 2, 2024, Ms. Corcoran issued Mr. Fazzino a second performance evaluation outside of the annual evaluation cycle, rating him poorly in part for Mr. Fazzino's disability accommodations and FLMA protected absences.  Id. at ¶ 40.  Mr. Fazzino was the only employee subject to an off-cycle performance evaluation by Ms. Corcoran.  Id.  On February 28, 2024, Mr. Fazzino was suspended due to the second negative performance evaluation and, on March 6, 2024, Mr. Fazzino received a letter of dismissal from State Service for having received two successive negative performance evaluations.  Id. at ¶¶ 42, 43.

B.  Procedural Background

Mr. Fazzino filed his original Complaint on May 27, 2025, in Connecticut Superior Court for the Judicial District of Hartford.  See Doc. No. 1-1.  On July 3, 2025, Vinal Tech moved to remove the action to federal court pursuant to this court's federal question jurisdiction under 28 U.S.C. § 1441(a)-(c).  See Notice of Removal (Doc. No. 1).  Vinal Tech moved to dismiss the original Complaint on August 11, 2025.  See Motion to Dismiss Complaint (Doc. No. 17).

Thereafter, Mr. Fazzino filed an Amended Complaint on September 2, 2025. See Doc. No. 20.  Mr. Fazzino alleged, inter alia, disability discrimination in violation of both state and federal law.  See generally, id.  On October 2, 2025, Vinal Tech filed the instant Motion to Dismiss the Amended Complaint.  See Doc. No. 29.  Mr. Fazzino filed his Opposition on October 23, 2025.  See Doc. No. 30.  Vinal Tech filed their Reply on November 6, 2025.  See Doc. No. 31.

III.     **LEGAL STANDARD**

A.  Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of proving the existence of subject matter jurisdiction. Makarova, 201 F.3d at 113. In determining whether the plaintiff has met this burden, the court must accept as true all factual allegations in a complaint and draw all reasonable inferences in favor of the plaintiff. See Carter v. HealthPort Techs., LLC, 822 F.3d 47, 57 (2d Cir. 2016); Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). The court may also rely on evidence outside a complaint in deciding a Rule 12(b)(1) motion. See Makarova, 201 F.3d at 113.

B.  Rule 12(b)(6)

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the non-movant's favor. See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020). However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678. In deciding a

7

motion to dismiss under Rule 12(b)(6), courts may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

## IV.    DISCUSSION

Vinal Tech challenges the Amended Complaint as both jurisdictionally and legally insufficient across its six counts. See, generally, Mot.

At the outset, the court recognizes that, in his Opposition, Mr. Fazzino has withdrawn and abandoned Counts Four and Five (his FMLA and Title VII claims, respectively), as well as his prayer for damages under Conn. Gen. Stat. § 31-72, his prayer for punitive and emotional distress damages under the Rehabilitation Act, and any claims for pre- or post-judgment interest under the CFEPA. See Opp. at 24. In light of these withdrawals, the court focuses its analysis only on Counts One, Two, Three, and Six and the damages available thereunder.

### A.    CFEPA: Counts One, Two, and Three

i.    Timeliness: Vinal Tech first challenges Counts One, Two, and Three (the CFEPA claims) as time barred. Vinal Tech argues that, because Mr. Fazzino filed his complaint with the CHRO on August 13, 2024, Mr. Fazzino cannot advance Counts One, Two, or Three based on events that took place prior to October 18, 2023 (i.e., 300 days prior to August 13, 2024). Mot. at 5.

CFEPA requires a plaintiff to file a charge with the CHRO within 300 days of the alleged unlawful employment practice. Conn. Gen. Stat. § 46a-82(f)(1); see also, Little v. R & L Carriers, Inc., 2025 WL 744276, at *4 (D. Conn. Mar. 9, 2025). Mr. Fazzino

8

filed his charge with the CHRO on August 13, 2024, thereby setting October 18, 2023, as the cut-off date for Mr. Fazzino's CFEPA claims.

While Vinal Tech correctly points out that many of the alleged facts in the Amended Complaint occurred outside the 300-day window pegged to the CHRO charge filings date, that cut-off date does not tell the full story.  Indeed, accepting as true that certain events alleged in the Amended Complaint fall outside the 300-day window, that argument ignores that Mr. Fazzino alleges many events which do take place within the 300-day window, and those timely events constitute some of the most consequential discriminatory conduct of which Mr. Fazzino complains.  For example, Mr. Fazzino's out of cycle evaluation took place on February 2, 2024, see Am. Compl. at ¶ 40, after which Mr. Fazzino was ultimately suspended and terminated.  Indeed, that the Amended Complaint alleges events that, standing alone, might be time barred, does not justify dismissal of claims where timely events are also alleged in tandem.[2]

Furthermore, even where factual allegations fall outside the 300-day window of the CFEPA, those allegations remain relevant to the extent they provide context to timely allegations or otherwise form the basis of continuing discriminatory conduct.  Indeed, the Supreme Court has stated that, with respect to Title VII,[3] while "discrete

---

[2] Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 112-13 (2002) (holding that, in the context of federal antidiscrimination law, a plaintiff is "not barred from using the prior acts [alleged] as background evidence in support of a timely claim," even where discrete acts outside the limitations window are not actionable.)

[3] "Connecticut courts have held that 'Connecticut antidiscrimination statutes should be interpreted in accordance with federal antidiscrimination laws,' and therefore courts must 'look to federal law for guidance in interpreting state employment discrimination law and analyze claims under CFEPA in the same manner as federal courts evaluate federal discrimination claims.'" V.W. v. Yale Univ., 2024 WL 4349032, at *7 (D. Conn. Sept. 30, 2024) (citing Roman v. A&S Innersprings USA, LLC, 223 Conn. App. 403, 420–21 (2024)).  Therefore, the standard for evaluating the statutory limitation period with respect to CFEPA is the same standard as that articulated in Morgan.  Id.

acts that fall within the statutory time period do not make timely acts that fall outside the time period," an employee is not barred "from using the prior acts as background evidence in support of a timely claim." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 112-13 (2002). Furthermore, the Amended Complaint complains of conduct that remained ongoing throughout Mr. Fazzino's employment, both predating and occurring within the statutory period. For example, Mr. Fazzino alleges that Ms. Corcoran failed to accommodate his memory issues, issues which were first revealed to Ms. Corcoran right at the cusp of the statutory period and her subsequent failure to engage in any interactive process that could accommodate Mr. Fazzino necessarily fell within the statutory period and remained ongoing. See Am. Compl. at ¶¶ 37-41. For that reason, the untimeliness of certain conduct in the Amended Complaint may form the basis of limiting the scope of damages available to Mr. Fazzino, but it does not warrant dismissal of the CFEPA claims wholesale.

ii.  Plausibility: Vinal Tech separately challenges Count Three, Mr. Fazzino's CFEPA claim asserting denial of a reasonable accommodation, as not plausibly pled. See Mot. at 7. Vinal Tech groups Mr. Fazzino's accommodation requests into three categories: (1) an accommodation concerning the back injury Mr. Fazzino sustained in March 2023; (2) Mr. Fazzino's intermittent leave accommodations pursuant to the FMLA; and (3) accommodations for Mr. Fazzino's memory issues. See Mot. at 7-10. Mr. Fazzino focuses his opposition on Vinal Tech's challenge as to the third category of accommodation, concerning his memory issues. See Opposition at 8-13. As Mr. Fazzino need only plausibly allege one theory of failure to accommodate as a basis for

Count Three to survive dismissal at this stage, the court will focus its attention on the memory issue accommodation.

As alleged in the Amended Complaint, Mr. Fazzino states that, around the time Ms. Corcoran issued Mr. Fazzino the first written warning for job performance, Ms. Corcoran had "documented that when [Mr. Fazzino] was given specific projects with detailed instructions, [Mr. Fazzino] did a fantastic job, but without detailed instructions, [Mr. Fazzino] would have difficulty remembering to complete certain job functions."  Am. Compl. at ¶ 38.  It was at this point that Mr. Fazzino disclosed to Ms. Corcoran that he suffered from memory issues.  Id. at ¶ 39.  Mr. Fazzino alleges Ms. Corcoran leveraged Mr. Fazzino's memory issues as a way of subjecting Mr. Fazzino to further disciplinary action, including his eventual termination.  Id. at ¶ 59.

To establish a prima facie claim for failure to accommodate under the CFEPA, Mr. Fazzino must show that (1) he was disabled within the meaning of the statute, (2) he was able to perform the essential functions of his job with or without a reasonable accommodation, and (3) Vinal Tech, despite knowing of Mr. Fazzino's disability, did not reasonably accommodate it.  Curry v. Allan S. Goodman, Inc., 286 Conn. 390, 415 (2008).  Once a disabled individual has suggested to his or her employer a reasonable accommodation, the employer and employee must engage in an informal, interactive process to identify the precise limitations of the protected disability and the reasonable potential accommodations that could overcome those limitations.  Id. at 416.  As part of this effort, the employee must suggest the accommodation, and the employer must make a good faith effort to engage in discussing that accommodation.  Id.

11

Vinal Tech first states that Mr. Fazzino failed to allege that he was able to perform the essential duties of his position with or without reasonable accommodation. Mot. at 9.  The court disagrees.  Though not alleged explicitly, the Amended Complaint states (1) prior to Mr. Fazzino's disclosure of his disability, Mr. Fazzino "did not have a single disciplinary action and/or any indication of poor or lacking job performance," and (2) when Mr. Fazzino was supplied with detailed instructions to accompany specific projects, Mr. Fazzino did a "fantastic job."  Am. Compl. at ¶¶ 22, 38.  Taken together, the court reads these two allegations to plausibly imply that Mr. Fazzino was capable of performing the essential duties of his job, with or without accommodation.

Vinal Tech goes on to argue that Mr. Fazzino failed to allege that he requested an accommodation with respect to his memory issues.  Mot. at 9.  Again, the court does not agree.  While not explicitly stated, Ms. Corcoran's awareness of Mr. Fazzino's memory issues and her recognition that, with detailed instructions, Mr. Fazzino does a fantastic job, see Am. Compl. at ¶ 38, can be read to imply that Mr. Fazzino and Ms. Corcoran were already in dialogue about a potential accommodation, i.e., detailed instructions, that Ms. Corcoran failed to explore in good faith.  That Mr. Fazzino does not allege explicitly approaching Ms. Corcoran with a request for those instructions, without more, does not warrant dismissal of the reasonable accommodation claim.

For the reasons described above, Counts One, Two, and Three survive Vinal Tech's Motion to Dismiss.

B.      The Rehabilitation Act: Count Six

Mr. Fazzino alleges three forms of disability discrimination arising under Section 504 of the Rehabilitation Act in Count Six: (1) disparate treatment; (2) failure to

accommodate; and (3) retaliation.  Vinal Tech challenges both the jurisdictional validity and legal sufficiency of each of the Count Six claims.

As a preliminary matter, the parties quibble as to whether Count Six is more properly pled as three separate counts. See Mot. at 18, Opp. at 14.  The court declines to analyze, at the dismissal stage, the most efficient organization of the alleged issues with respect to that organization's eventual impact on discovery and trial preparation. As such, the court analyzes the three claims as under the Count Six umbrella.

i.   Jurisdiction: As a threshold matter, Vinal Tech argues that Mr. Fazzino failed to plead that Vinal Tech is a "qualifying employer" for purposes of section 504 liability because Mr. Fazzino failed to allege that Vinal Tech received federal funds during the relevant time period.  Mot. at 18-19.  Vinal Tech asserts that Mr. Fazzino's failure to adequately plead that Vinal Tech is a qualifying employer for purposes of section 504 presents a subject matter jurisdiction defect, namely that Mr. Fazzino cannot show that Vinal Tech has waived Eleventh Amendment immunity against suit in federal court. Mot. at 18-19.

Section 504 of the Rehabilitation Act applies only to those government agencies or departments that accept federal funds, and only during those time periods where federal funds are accepted.  Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 113 n.2 (2d Cir. 2001).  When Congress provides funding pursuant to the Spending Clause, "Congress may require as a condition of accepting those funds that a state agree to waive its sovereign immunity from suit in federal court . . . .  Congress did so when it enacted Section 504 of the Rehabilitation Act." T.W. v. New York State Bd. of L. Examiners, 996 F.3d 87, 92 (2d Cir. 2021).  Immunity waiver, however, is not limitless:

13

> There are thus three ways by which a State entity may waive its immunity to suit under Section 504. First, the entity may directly request and receive federal financial assistance that is conditioned on Section 504 coverage. Second, the entity may be a "program or activity" of a "department, agency, special purpose district, or other instrumentality of a State or of a local government," "any part of which" receives federal aid. 29 U.S.C. § 794(b). And finally, the entity may indirectly receive federal financial assistance through another entity that requests and receives the Federal financial assistance in the first instance and then extends that money to the non-requesting entity.

Id. at 93 (2d Cir. 2021). The party that asserts Eleventh Amendment immunity bears the burden of demonstrating entitlement to that immunity. Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ., 466 F.3d 232, 238-39 (2d Cir. 2006); Riccio v. Examsoft Worldwide, Inc., 794 F. Supp. 3d 73, 93 (D. Conn. 2025).

Vinal Tech asks too much of Mr. Fazzino at the pleading stage. It is enough that Mr. Fazzino has pled that Vinal Tech is in receipt of federal funding through grants including, e.g., the Carl D. Perkins Career and Technical Education Act (Perkins V) grant. See Am. Compl. at Count Six ¶ 2. Indeed, because the burden of proving entitlement to the Eleventh Amendment rests with Vinal Tech, and the Second Circuit has analogized Eleventh Amendment immunity to an affirmative defense, see Woods, 466 F.3d at 238-39, it is Vinal Tech that must demonstrate entitlement to Eleventh Amendment immunity by showing that it did not receive funding during the relevant time period. Vinal Tech has failed to carry its burden at the dismissal stage.

ii. Disparate Treatment: Vinal Tech challenges Mr. Fazzino's disparate treatment claim as legally insufficient because Mr. Fazzino has not alleged an adverse employment action and has separately failed to show that his disability was the but-for cause of the putative adverse employment actions. Mot. at 19-20. Vinal Tech's argument fails on both fronts.

14

Generally, courts treat claims under both Section 504 and Title II of the ADA identically. Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003). To establish discrimination on the basis of disability under either the ADA or Section 504, a plaintiff may rely on "one of three theories of liability: disparate treatment, disparate impact, or failure to make a reasonable accommodation." Davis v. Shah, 821 F.3d 231, 260 (2d Cir. 2016). To establish a prima facie case of disparate treatment discrimination, a plaintiff must show that (1) he was disabled; (2) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (3) he suffered adverse employment action because of his disability. Fox v. Costco Wholesale Corp., 918 F.3d 65, 71 (2d Cir. 2019) (analyzing disparate treatment under the ADA).

The third element of the prima facie case contains two separate concepts: (1) adverse employment action and (2) causation. In terms of what constitutes an adverse employment action, "examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, and significantly diminished material responsibilities. . . ." Feingold v. New York, 366 F.3d 138, 152 (2d Cir.2004). However, because an adverse employment action has the same meaning under the Rehabilitation Act, the ADA, and Title VII, see Kelly, 200 F. Supp. 3d at 396 (E.D.N.Y. 2016); Medcalf v. Thompson Hine LLP, 84 F.Supp.3d 313, 329 n. 14 (S.D.N.Y.2015), a plaintiff need not show that the harm incurred was significant, serious, or substantial. Muldrow v. City of St. Louis, Missouri, 601 U.S. 346, 355 (2024). Mr. Fazzino has alleged that his eventual termination was the result of disability discrimination, in conjunction with the lesser events that culminated in that termination. See Am. Compl. at ¶¶ 42, 43.

15

Termination is, as Mr. Fazzino correctly states, the "paradigmatic" adverse employment action, see Opp. at 16, and for that reason the court need not discuss whether other actions in a vacuum (e.g., the PIP) are also adverse.

With respect to causation, a plaintiff must show that, "but for his disability his employer would not have inflicted the adverse employment action; however, a plaintiff need not establish that discrimination was the sole reason for the employer's action."[4] DeAngelo v. Yellowbook Inc., 105 F. Supp. 3d 166, 176 (D. Conn. 2015);  see also, Natofsky v. City of New York, 921 F.3d 337, 345-348 (2d Cir. 2019).  Here, Mr. Fazzino has adequately pled facts that raise an inference of but for causation.  As Mr. Fazzino alleges, his supervisor undertook a series of steps, ultimately culminating in his termination, that were driven by the disclosure of his disability and his use of an intermittent leave accommodation for that disability.  Mr. Fazzino need not show that his disability was the sole factor in Ms. Corcoran's discriminatory conduct: he need only show that she would not have acted in the manner alleged absent his disability.  A reasonable inference can be drawn from the pleadings that plausibly alleges his disability was a but for reason for the action.  For that reason, Mr. Fazzino's claim for disparate treatment survives dismissal.

iii.  Failure to Accommodate:  Vinal Tech next takes aim at the legal sufficiency and plausibility of Mr. Fazzino's failure to accommodate claim.  As with the CFEPA claim, the court focuses its accommodation inquiry on those accommodations related to

---

[4] For purposes of clarity, the court notes that the Rehabilitation Act uses the more onerous "but for" causation standard, compared to the "motivating factor" standard under CFEPA.  Nonetheless, Mr. Fazzino's Rehabilitation Act claim survives at the pleading stage under the but-for standard.  Natofsky v. City of New York, 921 F.3d 337, 351 (2d Cir. 2019); Wallace v. Caring Sols., LLC, 213 Conn. App. 605, 623, 278 A.3d 586, 600 (2022).

Mr. Fazzino's memory issues, not his back injury.  Given that Connecticut courts look to federal precedent for guidance in enforcing their state's antidiscrimination statutes, see Curry, 286 Conn. at 415, the court's analysis proceeds in similar fashion as it did with the CFEPA failure to accommodate claim.

Mr. Fazzino can state a claim for employment discrimination based on his employer's failure to accommodate his disability by alleging facts showing that the: (1) plaintiff is a person with a disability within the meaning of the statute; (2) the employer had notice of his disability; (3) with reasonable accommodation, the plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Kelly, 200 F. Supp. 3d at 398 (quoting McBride v. BIC Consumer Products Mfg. Co., 583 F.3d 92, 96–97 (2d Cir.2009)); see also Lyons v. Legal Aid Soc., 68 F.3d 1512, 1515 (2d Cir.1995) (recognizing that the elements of a failure-to-accommodate discrimination claim under the ADA and section 504 of the Rehabilitation Act are identical, other than section 504's requirement that the employer receive federal funding).

Vinal Tech's principal challenge is that Mr. Fazzino did not affirmatively seek an accommodation for his memory issues and therefore did not commence the interactive process necessary to accommodate his disability.  See Mot. at 31.  As with Vinal Tech's challenge to the CFEPA claim, this argument misses the mark.  The court reads the Amended Complaint as alleging sufficient facts to plausibly support the inference that Ms. Corcoran was aware of an accommodation that could assist with Mr. Fazzino's known disability, i.e., detailed instructions, and failed to furnish those instructions, resulting in poor performance reviews and eventual termination.  See Am. Compl. at ¶

17

38.  The court concludes that Mr. Fazzino has sufficiently pled a failure to accommodate under section 504 and that claim survives dismissal.

iv.  <u>Retaliation</u>:  Finally, the parties dispute the sufficiency of Mr. Fazzino's retaliation claim.  The elements of a retaliation claim under Section 504 are: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that [the] plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against [the] plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action."  <u>Puccinelli v. S. Connecticut State Univ.</u>, 2023 WL 4838291, at *10 (D. Conn. July 28, 2023) (internal quotations and citations omitted).  "Protected activity includes, for example, actions taken to report, oppose or protest unlawful discrimination, including complaints of discrimination to the employer, and the filing and pursuit of administrative charges . . . . Requests for accommodations also constitute protected activity."  <u>Id</u>.

Reading the Amended Complaint in a manner that draws all inferences in the nonmovant's favor, Mr. Fazzino has sufficiently pled that he was engaged in protected activity: the request for an accommodation of more detailed instructions for his memory issues.  Mr. Fazzino has also sufficiently pled, explicitly, that Ms. Corcoran knew that more detailed instructions would accommodate Mr. Fazzino's memory issues, when she wrote as much in her performance review of Mr. Fazzino.  <u>See</u> Am. Compl. at ¶ 38.  Mr. Fazzino has also sufficiently pled retaliatory conduct that would not have occurred but for his disability: the retaliatory conduct includes the events leading up to Mr. Fazzino's eventual termination and, as with the disparate treatment claim, Mr. Fazzino has plausibly alleged that such conduct would not have occurred absent Mr. Fazzino's

18

disclosure of his disability and attempt to use existing accommodations (i.e., intermittent leave) and request further accommodations (i.e., detailed instructions).  For these reasons, Mr. Fazzino's retaliation claim survives dismissal.

C.     Damages

Turning now to the issue of damages, Mr. Fazzino has abandoned his prayer for damages under Conn. Gen. Stat. § 31-72, any claims for pre- or post-judgment interest under CFEPA, and any claims for punitive and emotional distress damages under the Rehabilitation Act.  See Opp. at 24.  The parties focus their dispute on Mr. Fazzino's entitlement to punitive damages under CFEPA.  Id.

i.     Punitive Damages under CFEPA:  The parties dispute whether an award of punitive damages under the CFEPA is barred by the doctrine of sovereign immunity. The Connecticut Supreme Court has held that CFEPA "represents an unambiguous waiver of sovereign immunity, authorizing actions against the state for alleged discriminatory employment practices."  Lyon v. Jones, 291 Conn. 384, 397 (2009). However, that waiver does not necessarily include a waiver of immunity for all aspects of liability.  See Ware v. State, 118 Conn. App. 65, 88 (2009) (quoting Shay v. Rossi, 253 Conn. 134, 166-67, (2000), overruled in part on other grounds by Miller v. Egan, 265 Conn. 301 (2003)).

In determining whether the State has waived sovereign immunity, Connecticut courts have been guided by the "principle that statutes in derogation of sovereign immunity should be strictly construed."  Feliciano v. State, 336 Conn. 669, 675 (2020). This court has not found, nor has Mr. Fazzino cited, an instance where a Connecticut state court has awarded punitive damages against the State in an action brought under

19

CFEPA.  Indeed, many lower courts in Connecticut have explicitly found that punitive damages under the CFEPA are barred by the doctrine of sovereign immunity.  See, e.g., Pacheco v. Dep't of Correction, No. 2023 WL 142346, at *4 (Conn. Super. Ct. Jan. 5, 2023) (collecting cases).

Nonetheless, the statutory language of § 46a-104 provides that "[t]he court may grant. . . such legal and equitable relief which it deems appropriate including, but not limited to, temporary or permanent injunctive relief, punitive damages, attorney's fees and court costs." (emphasis added).  Mr. Fazzino urges that this plain language necessarily provides that punitive damages may be recovered in suits brought against the State.

In light of this unsettled question of state law, the court will request consideration of the question by the Connecticut Supreme Court pursuant to section 51-199 of the Connecticut General Statutes.  Discovery as to punitive damages is stayed pending a response by the Connecticut Supreme Court.

## V.    CONCLUSION

For the reasons stated above, the Motion to Dismiss is granted in part, denied in part, and stayed in part.  Counts Four and Five are dismissed.  Counts One, Two, Three, and Six remain pending.  Plaintiff's prayer for punitive damages for Counts One, Two, and Three (i.e., the counts arising under CFEPA) is stayed pending a response from the Connecticut Supreme Court.

**SO ORDERED.**

Dated at New Haven, Connecticut this 29th day of May 2026.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge

21